# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 15, 2009

## STATE OF TENNESSEE v. WILLIE JAMES KRISLE

**Direct Appeal from the Criminal Court for Sumner County**
**No. CR999-2007     Dee David Gay, Judge**

---

**No. M2009-00131-CCA-R3-CD - Filed June 8, 2010**

---

The appellant, Willie James Krisle, was convicted in the Sumner County Criminal Court of two counts of the sale of less than .5 grams of a substance containing cocaine, <u>see</u> Tenn. Code Ann. § 39-17-417(c)(2)(A), and he received a total effective sentence of eight years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions, specifically contending that there was insufficient evidence corroborating the testimony of his accomplice, co-defendant Robert Hargrove. Upon review, we affirm the appellant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

John Chadwick Long, Hendersonville, Tennessee (on appeal), and William Bart Highers, Gallatin, Tennessee (at trial), for the appellant, Willie James Krisle.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The State's proof at trial revealed that the Goodlettsville Police Department's Crime Suppression Unit received information that there was "narcotic activity" between Robert

Hargrove and the appellant at the Economy Inn just off of Louisville Highway in Sumner County. Based upon this information, on August 22, 2007, Officer Donald Smythe and Sergeant Donald Thornton arranged for Brian Hayden, a confidential informant with whom Sergeant Thornton had previously worked, to make an undercover purchase of crack cocaine. Hayden was paid $30 for each purchase of crack cocaine from Hargrove. Hayden was staying in room 34 of the motel, Hargrove was in room 36, and the appellant was in room 38.

The officers searched Hayden before he met with Hargrove. Finding no contraband or money, the officers gave Hayden $40 in cash to purchase the crack cocaine. Officer Smythe positioned himself under a bridge located 150 yards from the motel and used binoculars to watch Hayden. Sergeant Thornton watched Hayden from the police cruiser he parked at a nearby market. Through radio contact, the officers kept each other apprised of Hayden's movements.

Hayden knocked on Hargrove's door and went inside. He gave Hargrove the money and asked him to "go see [the appellant] for me." Hargrove left his room and, at the banister, looked left and right and down into the parking lot. After perusing the area, Hargrove went to the appellant's room, and, upon returning gave Hayden the crack cocaine. Hargrove took a "pinch" of the crack cocaine in exchange for obtaining it for Hayden. Hargrove's visit to the appellant's room took less than two minutes. Hayden left Hargrove's room and returned to Sergeant Thornton to relinquish the crack cocaine. Later, forensic testing revealed that the substance obtained during the buy was .1 gram of cocaine base.

Subsequently, on August 28, 2007, police repeated the procedure. Police searched Hayden prior to giving him $60 in cash, which they had photocopied, to procure more crack cocaine. Hayden went to Hargrove's room, gave him money, and asked if he would obtain crack cocaine from the appellant for him. Hargrove took Hayden's cash, went to the appellant's room, and returned with the crack cocaine, again taking a "pinch" for himself. Hayden left and turned the crack cocaine over to Sergeant Thornton. Forensic testing revealed that the substance was .3 grams of cocaine base.

On August 30, 2007, Officer Smythe and Sergeant Thornton executed search warrants on Hargrove's and the appellant's rooms. Officer Smythe conducted the search of Hargrove's room. He stated that Hargrove's room was a "pigsty" and that the room contained a lot of drug paraphernalia, including "crack pipes" and Brillo pads which had been used in the "crack pipes."

Sergeant Thornton stated that the appellant's room was also "nasty" but that he discovered no drugs or paraphernalia. However, Sergeant Thornton found $780 in cash concealed in a "little cabinet and like a vent" in the appellant's kitchen. One twenty-dollar

bill and one ten-dollar bill matched the cash which had been photocopied by police prior to the August 28 drug buy. Sergeant Thornton stated that the appellant never petitioned for the return of his money; therefore, the money was forfeited to the state. In the room, Sergeant Thornton also found two "ledger sheets" or "score sheets" which listed names at the top and numbers in columns under the names. Sergeant Thornton opined that the sheets reflected "either money owed or it's amounts [of drugs] that he had sold." Sergeant Thornton acknowledged that at the top of one sheet was the name "Rummy" and that the numbers could be gin rummy scores.

Officer Smythe, Sergeant Thornton, and Hayden testified that they did not see the appellant during either buy. Hargrove stated that at Hayden's request, he purchased crack cocaine for Hayden. Further, Hargrove acknowledged that, based upon his part in the "scheme with [the appellant]," he pled guilty to delivery of cocaine.

The appellant did not present any proof or testify at trial.

Based upon the foregoing, the jury found the appellant guilty of two counts of the sale of a substance containing less than .5 grams of cocaine.[1] On appeal, the appellant challenges the sufficiency of the evidence sustaining his convictions.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

---

[1] The appellant was originally indicted on two counts of the sale of .5 grams or more of a substance containing cocaine. However, prior to trial the State made an oral motion to amend the indictments to charge the appellant for the sale of less than .5 grams of cocaine. The trial court granted the State's motion.

The appellant argues that the evidence was insufficient to sustain his convictions because the testimony of Hargrove, his accomplice, was not sufficiently corroborated. The appellant is correct in his assertion that Hargrove is an accomplice as a matter of law because he was charged with delivery of cocaine for his role in the instant crimes. See State v. Robinson, 239 S.W.3d 211, 225 (Tenn. Crim. App. 2006). The appellant is also correct that the uncorroborated testimony of an accomplice is insufficient to sustain a conviction. Id. at 229. The corroboration "need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration." State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). Such corroborative evidence may be direct or circumstantial. See State v. Spadafina, 952 S.W.2d 444, 450 (Tenn. Crim. App. 1996).

Hargrove testified that he was involved in a drug operation with the appellant and that Hayden asked him to buy crack cocaine from the appellant. In return for obtaining the crack cocaine, Hargrove took a "pinch" of the drug. Contrary to the appellant's claim, however, the appellant's conviction was not based entirely upon the testimony of Hargrove. The officers testified that on both occasions, they observed Hayden enter Hargrove's room. A minute or two thereafter, the officers saw Hargrove leave his room and go the appellant's room for one or two minutes before returning. Hayden testified that on both occasions he asked Hargrove to "go see [the appellant]" to obtain crack cocaine for Hayden. After Hayden made the request and gave Hargrove money, Hargrove went to the appellant's room, stayed for less than two minutes, and returned with the crack cocaine. Hayden stated that Hargrove took a "pinch" of the crack cocaine in exchange for delivering it to Hayden. Later, a search of the appellant's room uncovered cash which Hayden used in the August 28 drug buy. We conclude that there was sufficient evidence to corroborate Hargrove's testimony and to sustain the appellant's convictions.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-4-